1   Perry J. Narancic, SBN 206820
    LEXANALYTICA, PC
2   3000 El Camino Real
    Bldg. 4, Suite 200
3   Palo Alto, CA  94306
    www.lexanalytica.com
4   pjn@lexanalytica.com
    Tel: 650-655-2800
5

6   Attorneys for Plaintiff
    WHALECO INC.
7

8                   UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  WHALECO INC.                          Case No.

12          Plaintiff,                    **COMPLAINT FOR:**
        v.
13                                         **1) CYBERSQUATTING AGAINST
                                           <TEMUDS.COM> AND
14  <TEMUDS.COM>, <JOINTEMU.COM>,          <JOINTEMU.COM>** *IN REM*
    SIMPLYLABS, and DOES 1-50.             **[15 U.S.C. § 1125 (d)]**
15
                                           **2) UNFAIR COMPETITION AND
16          Defendants.                    FALSE DESIGNATION OF ORIGIN
                                           [15 U.S.C. § 1125 (a)]**
17
                                           **3) COMMON LAW TRADEMARK
18                                         INFRINGEMENT**

19

20      Plaintiff Whaleco Inc. alleges the following:

21

22                      **NATURE OF THE CASE**

23      This is an action for *in rem* claim against <temuds.com> and <jointemu.com> domain

24  names (the "Infringing Domain Names") based on the Anti-Cybersquatting Consumer Protection

25  Act ("ACPA"), 15 U.S.C. § 1125(d), and related trademark infringement and unfair competition

26  claims.  The Infringing Domain Names have been registered, trafficked in, and/or used with a bad

27  faith intent to profit from Whaleco's trademarks in violation of the ACPA. The Infringing

28

- 1-

Domain Names, and the downloadable applications thereon,  are being used to divert consumers away from Plaintiff's leading ecommerce site at TEMU.COM.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2.      This Court has *in rem* jurisdiction over the Infringing Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A). Whaleco, through due diligence, has not been able to find a person who would have been a defendant because the identity of the registrant of the Infringing Domain Names is concealed by a privacy service. 15 U.S.C. § 1125(d)(2)(A)(ii). Additionally, under 15 U.S.C. § 1125(d)(2)(C), the Infringing Domain Names are deemed to have their situs in this judicial district because (a) Google LLC ("Google") – the domain name registrar – is located in this District, and (b) the registry for the Infringing Domain Names is Verisign, Inc. which is located in this District.

3.      Pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa), Whaleco will give notice of the violation of its rights and of its intent to proceed *in rem* to the postal and e-mail addresses set forth in the WHOIS registration records for the Infringing Domain Names.

4.      Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. §§ 1391(b)(2) and 15 U.S.C. § 1125(d)(2) because the property – the Infringing Domain Names – are located in this District, since : Google  LLC– the domain name registrar – is located in this District, and (b) the registry for the Infringing Domain Names is Verisign, Inc. which is located in this District.

## PARTIES

5.      Plaintiff Whaleco Inc. ("Whaleco") is a Delaware corporation that is registered to do business in California. Whaleco is indirectly wholly-owned by Pinduoduo Inc., the shares of which are publicly traded on the NASDAQ stock exchange under the symbol PDD, with a market capitalization in excess of $100 billion.

6.     <temuds.com> is an Internet domain name registered on November 29, 2022, through domain name registrar Google LLC, utilizing a privacy service that shields the identity of the true registrant.

7.     <jointemu.com> is an Internet domain name registered on November 29, 2022, through domain name registrar Google LLC, utilizing a privacy service utilizing that shields the identity of the true registrant.

8.     SimplyLab is an entity of unknown nature and location.  It is listed as the publisher of the infringing applications further described below, including the applications located at <temuds.com> and <jointemu.com>.

9.     DOES 1 through 10 are individuals or corporations of unknown residents and citizenship. Plaintiff does not know any of the DOE identities or locations at this time, and has been unable to discover them through reasonable due diligence.

10.     The true names and capacities of the defendants named herein as DOES 1 through 10, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, which therefore sues those defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the defendants designated as a DOE defendant is an actual person or entity involved in the acquisition, ownership, or use of the Infringing Domain Names. Plaintiff is informed and believes, and thereon alleges, at each of the defendants designated as a DOE is legally responsible for the events herein after alleged, and legally caused injury and damages proximately thereby to Plaintiff as herein alleged. Plaintiff will seek leave to amend this Complaint when the true names and capacities of the DOE defendants have been ascertained.

## **FACTS**

11.     Whaleco Inc. operates an ecommerce platform called TEMU at temu.com ("TEMU.COM" or the "Platform").  The Platform is also accessible via the Temu app, which can be downloaded on both the Apple App Store and the Google Play Store.

12.     The Platform has operated in the United States since September 1, 2022. Consumers in the United States can purchase goods on the Platform from third party sellers in many categories, including  clothing, consumer goods, cosmetics, appliances and electronics.

13.     TEMU.COM is a closed-loop online marketplace that connects consumers with sellers, manufacturers and brands around the world. The Platform is committed to offering the most affordable quality products to enable consumers and sellers in an inclusive environment. To keep the Platform convenient and inclusive for consumers and sellers, Plaintiff and its affiliates provide a wide range of value-add services to sellers, including fulfillment, warehousing, logistics, customer services, post-sale support, returns and refunds. To keep the Platform a safe and secure shopping environment for consumers, Plaintiff and its affiliates also provide trust and safety services to curate sellers and control the quality of goods, risk control and data security services to protect consumers' personal and payment information.

14.     Since TEMU.COM went live in September 2022, Plaintiff has used its unique logo and "TEMU" to identify its services.

15.     On August 10, 2022, Plaintiff, through Five Bells Limited, filed a federal trademark application for "TEMU" (SN: 97543542) under class 35 for, among other things, "Provision of an online marketplace for buyers and sellers of goods and services"

16.     On August 10, 2022, Plaintiff, through Five Bells Limited, filed a federal trademark application for "TEMU" (SN: 97543570) under class 42 for, among other things, "Software as a service (SAAS) services featuring software for online shopping".

17.     On September 1, 2022, Plaintiff, through Five Bells Limited, filed a federal trademark application for the TEMU logo (SN: 97575680) under class 35 for, among other things, "Provision of an online marketplace for buyers and sellers of goods and services"

18.     On September 1, 2022, Plaintiff, through Five Bells Limited, filed a federal trademark application for the TEMU logo (SN: 97575712) under class 42 for, among other things, "Software as a service (SAAS) services featuring software for online shopping".

19.     The foregoing applications are attached hereto as Exhibit A.

20.     The TEMU logo that is the subject of the applications under serial numbers 97575680 and 97575712 is as follows:

1

2

3

4

5

6



7      21.      Together, the word mark TEMU and the TEMU logo are referred to herein as the

8  "TEMU Marks".

9      22.      Plaintiff has used the TEMU Marks continuously since September 2022 to identify

10 the source and origin of its services, and its website at TEMU.COM. Reproduced below and

11 attached hereto as **Exhibit B** is a screenshot of the homepage of TEMU.COM as of January 23,

12 2023.

13

14

15

16

17

18

19

20

21

22

23

24      23.      The Platform has become extremely successful.  It has become the number one

25 shopping app in the US App Store. According to TechCrunch, "after becoming the number one

26 shopping app in the US App Store back in September, [TEMU] took the crown of free US iPhone

27 apps across all categories on November 12".  Attached hereto as **Exhibit C** is a screenshot from

28 techcrunch.com containing an article stating facts concerning TEMU's downloads.  Attached

1   hereto as **Exhibit D** is a screenshot from the Google Play Store showing that the TEMU app has

2   been downloaded more than 5 million times, which is accurate. Today, Plaintiff processes

3   millions of dollars of transactions every month from sales made in California alone, and processes

4   more throughout the United States.

5         24.     On January 17, 2023, Plaintiff became aware of a software program called

6   TEMUDS (the "TEMUDS Application") and a website at TEMUDS.COM.  The screenshot

7   below and **Exhibit E** attached hereto show the homepage for TEMUDS.COM, and shows the

8   TEMUDS Application available for download:



21         25.     As shown below and in the attached **Exhibit F**, the TEMUDS Application is also

22   available for download as a Shopify App at www.shopify.com, a global commerce platform that

23   allows users to open virtual stores ("storefronts") and sell goods, mostly from third-party sellers:

- 6 -

Whaleco Inc. v. <temuds.com>.                           Case No.
Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15    26.    As shown below and in the attached **Exhibit G**, the TEMUDS Application is also

16  available for download as a Chrome Extension at Google's Chrome Web Store:

17
18
19
20
21
22
23
24
25
26
27
28



Whaleco Inc. v. <temuds.com>.                                                                           Case No.
Complaint

1

2      27.     Both TEMUDS.COM and the TEMUDS Application and have been using the

3    TEMU Marks, including an orange square logo that is deceptively similar to that used by

4    Plaintiff.

5      28.     On January 17, 2023, Plaintiff also became aware of another Shopify app called

6    TEMUIMPORTER (the "Temuimporter Application").  As shown below and in the attached

7    **Exhibit H**, TEMUIMPORTER is available for download at www.shopify.com.

8    TEMUIMPORTER has been using the TEMU Marks.

9

10

11

12   

13

14

15

16

17

18     29.     On January 17, 2023, Plaintiff also became aware of a website at JOINTEMU.COM

19   and the associated Chrome extension (the "Jointemu Chrome Extension"). The screenshot below

20   and **Exhibit I** attached hereto, show the homepage for JOINTEMU.COM, and also shows the

21   Jointemu Chrome Extension available for downlaod:

22

23

24

25

26

27

28

Whaleco Inc. v. <temuds.com>.                                                    Case No.
Complaint

1

2

3

4

5

6

7

8

9

10

11

12

13



14   30.   As shown below and in the attached **Exhibit J**, the Jointemu Chrome Extension is

15   also available for download at Google's Chrome Web Store.

16

17

18

19

20

21

22

23

24

25

26

27

28



Whaleco Inc. v. <temuds.com>.                                                                      Case No.
Complaint

31.     Both JOINTEMU.COM and the TEMU Chrome Extension  are using the TEMU Marks. The Jointemu Chrome Extension is a plugin to e-commerce sites, such as Amazon, Etsy, Shein, eBay, that shows products from TEMU.COM that are the same as or similar to the products being searched for in such sites. The Jointemu Chrome Extension is ***not*** authorized by Plaintiff, and Plaintiff does not want to be associated with a Chrome extension over which it has no quality control or security oversight.

32.     The previously discussed TEMUDS Application (available at TEMUDS.COM and the Shopify app store) and TEMUIMPORTER Application (also available on the Shopify App store) differ from the Jointemu Chrome Extension. The former are software programs that help storefront owners on Shopify to identify and ingest popular products from TEMU.COM to their storefronts.  For instance, a storefront owner may identify a pair of gloves from TEMU.COM and post those gloves for sale on their storefront, but without a reference to Plaintiff or TEMU.COM. If a consumer purchases the gloves through the Shopify storefront, the storefront owner will execute a purchase through TEMU.COM, and Plaintiff will process the order like any other order, not knowing that such order actually originated with a Shopify storefront instead of a genuine customer who made the order through TEMU.COM.

33.     Plaintiff spends millions of dollars in building and optimizing an online infrastructure for sellers, as well as curating sellers.  These substantial efforts have included selecting, recruiting and screening reputable sellers, so that the quality of the shopping experience for consumers is very high.

34.     Plaintiff also spends millions of dollars on marketing and developing its brand. Traffic to the TEMU.COM is one of the most important assets of the Platform.  The number of consumers using the Platform is a key factor in attracting more quality sellers, which in turn attracts more consumers.  There is a mutually reinforcing circle of attracting more sellers, which attracts more consumers – a phenomenon sometimes referred to as a "network effect" i.e. the more people use a system, the more valuable it becomes for all.

35.     To this end, the company has a significant marketing budget, including working with key influencers, and advertising on social media.  For instance, Plaintiff pays content creators

1  (e.g. YouTubers) to promote TEMU.COM, as "influencers".  The screenshot below and **Exhibit**

2  **K**, attached hereto show Plaintiff's influence program.







16      36.     **Exhibit L** attached hereto show one TEMU influencer's YouTube presentation.

17      37.     TEMUDS.COM, the TEMUDS Application,  the TEMUIMPORTER Application,

18  JOINTEMU.COM and Jointemu Application (collectively, the "Infringing Programs") availability

19  has caused serious economic and reputational harm to Plaintiff.

20      38.     First, the Infringing Programs cause substantial confusion among sellers and

21  consumers. The Platform has a specific policy that drop-shipping, the exact services provided by

22  the TEMUDS and TEMUIMPORTER applications, is expressly prohibited on TEMU.COM (See

23  **Exhibit M**).  When Shopify storefront owners see the TEMU Marks on these Shopify apps, they

24  may use them and mistakenly believe that they are developed, sponsored or endorsed by the

25  Platform.  When the Platform enforces its policy against these Shopify storefronts, these storefront

26  owners' interests will be significantly harmed.  And more importantly, if the orders by these

27  storefront owners are cancelled per the Platform's policy, the interests of the consumers that

28  purchased from these storefronts will also be significantly harmed.

- 11-

39.     When consumers see the TEMU Marks on the Jointemu Chrome Extension, they may use it and mistakenly believe that they are developed, sponsored or endorsed by the Platform. In fact, the Platform has no affiliation with the Jointemu Chrome Extension, and Plaintiff  cannot ensure the accuracy or security of the services provided by the Jointemu Chrome Extension.  These consumers' trust will be misplaced and interests harmed.

40.     Second, the Infringing Programs have caused serious economic and reputational harm to Plaintiff.

41.     The TEMUDS and TEMUIMPORTER applications allow Shopify storefront owners to "free-ride" on the very costly efforts of Plaintiff to curate millions of sellers.  This allows the Shopify storefront owners to attract high quality customers, lured by high quality and popular goods, which were curated by Plaintiff.  In doing so, consumers are diverted away from TEMU.COM, which causes the value of the Platform to be substantially decreased, since the numbers of users is being reduced and network effects are diminished.

42.     The Infringing Programs also cause reputational harm to Plaintiff.  When a consumer makes a purchase of a product on TEMU.COM through a Shopify storefront enabled by the Infringing Products, Plaintiff will not have a record of that consumer.  Accordingly, Plaintiff will not be able to provide support to that consumer, including after-sales support.  This will adversely affect Plaintiff's reputation for high quality after-sales support and service. TEMU.COM may also cancel the purchase order if it detects that the order is a drop-shipping order from a Shopify storefront.  The consumer may not be aware of the policy and blame TEMU.COM for failure to complete the transaction, therefore harming Plaintiff's reputation.

**COUNT I**
**(Cybersquatting Against the Infringing Domain Names *In Rem*)**
**[Lanham Act, 15 U.S.C. § 1125(d))]**

43.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

44.     The registrant of the Infringing Domain Names has registered, trafficked in, and/or used domain names that are identical and confusingly similar to the TEMU Marks, which were distinctive at the time the registrants registered them in violation of the ACPA.

45.     The registrant of the Infringing Domain Names has a bad faith intent to profit from the TEMU Marks because the registrant has no legal right to use the Infringing Domain Names, which are being used to divert consumers from Plaintiff's legitimate website for the purpose of commercial gain.

46.     Under the ACPA, Plaintiff is entitled to an order requiring the domain name registrar, Google, or the .com registry, Verisign, Inc., to transfer the Infringing Domain Names to Plaintiff's  registrar of choice.

47.     As a direct and proximate result of the wrongful conduct described in this Complaint, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

48.     Plaintiff has been required to retain the services of an attorney to pursue its claims and is entitled to reasonable attorneys' fees and costs incurred in the prosecution of this action.

**COUNT II**
**(Unfair Competition and False Designation of Origin)**
**(Against SimplyLabs and Does 1-10)**
**[Lanham Act, 15 U.S.C. § 1125(a))]**

49.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

50.     The use of the TEMU Marks by SimplyLabs and DOES 1-10 ("Defendants") causes or is likely to cause confusion, mistake and deception as to the affiliation, connection and association of Defendants with Plaintiff, and/or as to the origin, sponsorship and approval of Defendants' activities in connection with the TEMU Marks.

51.     Defendants' use of the TEMU Marks causes or is likely to cause confusion, mistake and deception as to the nature, characteristics, origin, and qualities of Defendants' activities in connection with the TEMU Marks.

52.     Defendants' acts have caused and, unless restrained by this Court, will continue to cause Plaintiff and the public to suffer great and irreparable damage and injury through, among other things: (a) likelihood of confusion, mistake and deception among the relevant purchasing public and trade as to Defendants' identity, and (b) Plaintiff's loss of valuable goodwill in business reputation symbolized by the TEMU Marks.

53.     Plaintiff is entitled to recover from Defendants the damages it has sustained, and will sustain, as a result of Defendants' wrongful conduct as alleged herein. Plaintiff is further entitled to recover from Defendants the gains, profits and advantages that they have obtained as a result of such wrongful conduct. Plaintiff at present is unable to ascertain the full extent of its damages, or the extent of the gains, profits and advantages that Defendants have obtained by reason of the wrongful conduct described herein.

54.     Plaintiff has no adequate remedy at law. Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts as set forth in this Complaint, including the unauthorized use of the TEMU Marks, Plaintiff will continue to suffer irreparable harm.

55.     Plaintiff is entitled, pursuant to 15 U.S.C. § 1116, to an injunction restraining Defendants, their officers, agents and employees and all persons acting in concert with them, from engaging in any further such acts of unfair competition and false designation of origin in violation of the Lanham Act.

**COUNT III**
**(Common Law Trademark Infringement)**
**(Against SimplyLabs and Does 1-10)**

56.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

57.     The use of the TEMU Marks by Defendants causes or is likely to cause confusion, mistake and deception as to the affiliation, connection and association of Defendants with Plaintiff, and/or as to the origin, sponsorship and approval of Defendants' activities in connection with the TEMU Marks.

58.     Plaintiff has been and will continue to be irreparably harmed by Defendants' infringing acts and unless Defendants are restrained from continuing their infringing acts, the harm to Plaintiff will increase.

59.     Defendants' infringement of the TEMU Marks is and has been willful.

60.     Plaintiff has no adequate remedy at law for Defendants' wrongful acts.

## JURY DEMAND

Plaintiff demands a jury trial on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.      A judgment in favor of Plaintiff on all of the claims for relief pleaded herein;

B.      An order requiring Verisign, Inc. and/or the Google LLC to place the Infringing Domain Names on hold and lock them for the pendency of this litigation;

C.      An order requiring Verisign, Inc. and/or Google LLC to disable the name server information for the Infringing Domain Names so that they are no longer accessible to Internet users for the pendency of this litigation;

D.      An order requiring, upon a finding on the merits, the current domain name registrar for the Infringing Domain Names to change the registrar of record for the Infringing Domain Names from the current domain name registrar to Plaintiff's registrar of choice;

E.      An order that Defendants, and their officers, employees, agents, servants, attorneys, and representatives, and all other persons, firms, or corporations in active concert or participation with them, be preliminarily and thereafter permanently enjoined and restrained, pursuant to the Court's inherent equitable jurisdiction and pursuant to 15 U.S.C. § 1116, from:

(1) operating any website, or using any domain names, that use the TEMU Marks;

(2) engaging in any act of federal, state, or common law trademark infringement or unfair competition that would damage or injure Plaintiff; and

(3) encouraging, participating in or assisting in any of the above activities;

F.      An order that the Defendants be required to account for and pay to Plaintiff all gains, profits, and advantages derived from their acts of infringement and other unlawful conduct, as alleged herein;

G.      That judgment be entered against Defendants for Plaintiff's actual damages as a result of Defendants' act of infringement and other unlawful conduct alleged herein;

H.      An order that Plaintiff be awarded maximum statutory damages for violations of the Anti-Cybersquatting provisions of the Lanham Act in an amount not less than $100,000 for each of the Infringing Domain Names;

I.      That Plaintiff be awarded punitive and exemplary damages pursuant to California common law;

J.      That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendants; and

K.      That Plaintiff be granted such other and further relief as the court deems just and proper.

Respectfully submitted,

LEXANALYTICA, PC

Dated: January 24, 2023                By:  /s/ Perry J. Narancic

ATTORNEYS FOR PLAINTIFF
WHALECO INC.

- 16-